# IN THE COURT OF APPEALS OF IOWA

No. 22-0788
Filed August 31, 2022

IN THE INTEREST OF J.C.,
Minor Child,

M.S., Father,
        Appellant.
_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

A father appeals the termination of his parental rights to his four-year-old daughter. **AFFIRMED.**

Arielle M. Lipman of Lipman Law Firm, P.C., West Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Kayla Stratton of Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

A father, Michael, appeals the termination of his parental rights to his daughter, J.C., who is now four years old. His appeal marks the second time that this family has been before our court. The juvenile court first terminated Michael's rights to J.C. when she was eight months old. Shortly after hearing that news, Michael relapsed on methamphetamine. But we reversed his termination on appeal, finding he did not receive proper notice of the child-in-need-of-assistance (CINA) petition and the State did not prove abandonment.[1] *In re J.C.*, No. 18-1514, 2018 WL 6719418, at *3 (Iowa Ct. App. Dec. 19, 2018).

After that remand, Michael successfully completed substance-abuse treatment and gained custody of his daughter in February 2020. Two months later, the first CINA case closed. Unfortunately, Michael tested positive for methamphetamine less than one year later. In response, the court removed J.C. from his care and again adjudicated her as a CINA. Through the rest of 2021, Michael struggled with his addiction. Alleging that Michael could not provide "consistency and stability" for his daughter, the State petitioned for termination in February 2022. After a two-day hearing, the juvenile court granted the State's petition in May 2022.

Michael now argues that the State failed to prove a ground for termination by clear and convincing evidence. Or, he contends, termination was not in J.C.'s best interests. Short of that, he asks to defer permanency for six months. Unconvinced by all three arguments, we affirm.

---

[1] The court also terminated the rights of J.C.'s biological mother, who did not appeal. So the termination decision was final as to the mother.

We review this termination decision de novo. *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021). The juvenile court's fact findings are not binding on us. *Id.* But they have heft, particularly when they address witness credibility. *See id.*

**Ground for termination**. The juvenile court relied on Iowa Code section 232.116(1)(f) (2022) in terminating Michael's rights. That section has four elements:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Only that fourth element is contested. In contending J.C. can come home, Michael points to reports from his substance-abuse and mental-health providers that show his engagement in treatment.[2] In his view, those reports contradict the juvenile court's determination that he had not truly addressed his substance-abuse or mental-health needs.

But his commitment to therapy is less clear-cut than Michael suggests. The juvenile court highlighted Michael's mental-health evaluation expressing concern that he was "overly focused on obtaining a medical marijuana card as well as obtaining stimulant mental health medications." The court doubted Michael's honesty, noting that he was "historically inconsistent in what he reveals to his

---

[2] He also points to his stable housing with his mother, which the Department of Human Services determined to be an appropriate space for visitation.

various providers." The court was concerned "[t]his ongoing triangulation makes it difficult to know if Michael is making real changes in addressing his addiction or trying to hide the depth of his use." The court continued:

> Ultimately, Michael has been unable to show sustained sobriety for a significant amount of time given his overall history of substance use. Even if the court were to assume that his marijuana usage is appropriate and not drug-seeking, Michael relapsed as recently as October. He has been through multiple treatment programs and has been unable to maintain sobriety for any significant period of his child's life.

Paying due deference to the juvenile court's credibility determinations, we likewise conclude that J.C. could not be safely returned to Michael's custody at the time of the termination hearing. The record showed that he had not embraced the services and supports he needed for long-term sobriety. Given the father's consistent use of methamphetamine, short period of sobriety, and lack of candor with providers, we fear relapse is likely. *See In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) (concluding because father's "relationship with methamphetamine" was not over, child could not be safely returned to his care).

Beyond that, Michael was inconsistent in visits with his daughter. And child-parent psychotherapy sessions did not go well. Michael's unreliability and their fraught relationship made prompt reunification impossible.

**Best interests**. Once we find a ground for termination proven, we ask whether severing the legal relationship with the parent would be in the child's best interests. *In re A.B.*, 957 N.W.2d 280, 300 (Iowa 2021). In answering that question, we give primary consideration to J.C.'s safety; to the best placement for furthering her long-term nurturing and growth; and to her physical, mental, and

emotional condition and needs. *See* Iowa Code § 232.116(2). We also consider whether she is integrated into a family foster home, how long she has been in that placement, and the desirability of maintaining that environment. *Id.* § 232.116(2)(b)(1).

Michael insists that he can meet J.C.'s physical, mental, and emotional needs. As an example, he asserts that before her removal he signed J.C. up for school and made sure her medical needs were met. We don't denigrate the positive parenting that Michael achieved. But it gave way to his drug use. *See A.B.*, 957 N.W.2d at 300 (finding termination was in child's best interests when parent was "at high risk for substance abuse" but denied continuing problem).

The bottom line is that J.C. has been out of his care for three-quarters of her life. For thirty-three months (both before and after she was returned to her father), she has been with the same foster family, where she feels at home. In fact, she is so bonded to the foster parents that she expresses anxiety that the case workers will remove her from their care. And the foster parents are willing to adopt her. Under these circumstances, termination was in J.C.'s best interests.

**Six-month delay in permanency.** As for Michael's request for more time, the juvenile court may postpone termination only if the need for removal "will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). The court decided it could not make that prediction because Michael had not "maintained significant, sustained sobriety" and had not rebuilt a healthy attachment with J.C. We agree that Michael did not show the progress necessary to merit a delay in permanency.

**AFFIRMED.**